**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. CCB-16-51** |
| v. | |
| **ANTONIO SHROPSHIRE, et al.,** | |
| **Defendants.** | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO**
**DEFENDANTS' MOTIONS FOR A JUDGMENT OF ACQUITTAL AND A NEW TRIAL**

Comes now the United States of America, by and through its undersigned counsel, and files this response in opposition to defendants' post-trial motions pursuant to F.R.CR.P. 29 and 33 (Documents No. 293 (Washington), 296 (Campbell), 297 (Wells), 298 (Thomas) and 299 (Shropshire)). These motions are meritless and should be denied.

I.   **PROCEDURAL HISTORY**

A Special Grand Jury returned a Third Superseding Indictment on February 23, 2017 charging six defendants – Shropshire, Washington, Campbell, Thomas, Gondo and Glen Wells. All six defendants were charged in Count One with conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code Sections 841(a)(1).

Count Two charged that on or about December 27, 2011, Defendant Washington possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and that death resulted from the use of that heroin, in violation of 21 U.S.C. § 841.

1

Count Three charged that on or about July 15, 2015, Defendant Shropshire possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841.

Count Four charged that on or about May 10, 2016, Defendant Campbell possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841.

Count Five charged that on or about May 24, 2016, Defendant Campbell possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841.

Count Seven charged that on or about November 30, 2016, Defendant Campbell possessed with intent to distribute and distributed a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841.

Defendant Gondo pled guilty to Count One of the Third Superseding Indictment on October 12, 2017.

All other Defendants entered pleas of not guilty and went to trial on October 16, 2017.

On October 31, 2017, the jury returned verdicts of guilty against all defendants.

Following the jury's guilty verdicts, Defendant Washington filed a motion for a new trial (Doc. No. 293), Defendant Campbell filed a motion for a judgment of acquittal pursuant to F.R.C.P. 29(c) and a for a new trial pursuant to F.R.C.P. 33 (Document No. 296), Defendant Wells filed a motion for a new trial (Document No. 297), Defendant Thomas filed a motion to adopt motions of co-defendants for judgment of acquittal and/or for new trial (Document No. 298) and Defendant Shropshire filed a motion for a new trial (Document No. 299).

## II.     FACTUAL SUMMARY

As to Count One, the Government presented a variety of evidence establishing a conspiracy among all the defendants to distribute heroin from 2010 to 2017.   This included recorded jail calls, intercepted telephone calls and texts, texts retrieved from phones seized from the defendants, controlled purchases of heroin from the defendants, surveillance of heroin sales by the defendants, testimony from individuals who supplied the defendants, Leon Koger and Aaron Anderson, testimony from a cooperating co-defendant, former Detective Gondo, and cooperating co-conspirator, former Detective Rayam, testimony from fourteen customers who purchased heroin from all of the defendants and other evidence.   All of this evidence, and more, established beyond a reasonable doubt that a single conspiracy existed among all five defendants to distribute heroin from 2010 to 2017.

As to Count Two, the Government called Kenneth Diggins, the individual who bought the heroin from Washington that resulted in J.L.'s death, to testify.   Diggins identified Washington as the person who sold him the heroin that he gave to J.L. on December 27, 2011.   Diggins also testified that several hours after she took the heroin he found her unresponsive.   The Government also called Ben Wentzel who testified that he introduced Diggins to Washington, and that Washington was Diggins source of heroin in December 2011.   Text message and telephone toll records corroborated Diggins' testimony that he purchased the heroin that killed J.L. from Washington on the morning of December 27, 2011.   Dr. Barry Levine, the toxicologist that analyzed urine and blood samples taken from J.L., testified that the only drug in her blood on December 27, 2011, was heroin and that 340 mcg/l was a "lethal dose."   Dr. Pamela Southall, the Deputy Medical Examiner, testified that based on the autopsy she performed and Dr. Levine's

toxicology report, she concluded that heroin intoxication was the "but for" cause of J.L.'s death in the early morning hours of December 28, 2011.

As to Count Three, the Government presented at trial a video recording showing Defendant Shropshire selling heroin to an undercover officer, Detective Miranda, who also testified, on July 15, 2015. The Government also presented testimony from the chemist who analyzed the substance Shropshire sold to Miranda and found it to be heroin. Finally, the Government moved the heroin itself in evidence.

As to Count Four, Detective Sandruck testified that he witnessed Defendant Campbell sell heroin to a confidential informant (CI) on May 10, 2016. Specifically, Detective Sandruck testified that on May 10, 2016, he was driving and the CI was a passenger and Campbell conducted a hand-to-hand heroin sale through the driver's side window with the CI, literally in front of Detective Sandruck. The Government also presented testimony from the chemist who analyzed the substance Campbell sold to Sandruck and found it to be heroin. Finally, the Government moved the heroin itself in evidence.

As to Count Five, Corporal McDougall testified that when Defendant Campbell was arrested on May 24, 2016, he was in possess of approximately 15 grams of heroin. The Government also presented testimony from the chemist who analyzed the heroin and moved the heroin itself in evidence. SA Edwards testified that 15 grams of heroin was a quantity consistent with distribution and not personal use.

As to Count Seven, Corporal McDougal and Detective Sandruck, both of whom were present, testified that at the time of his arrest, Defendant Shropshire had in his possession 185 grams of cocaine and 14 grams of heroin. The Government also presented testimony from the

Case 1:16-cr-00051-CCB   Document 300   Filed 11/28/17   Page 5 of 10

chemist who analyzed the heroin and cocaine and moved the heroin and cocaine in evidence.

### III.  LEGAL AUTHORITY

"The standard for reversing a jury verdict of guilty is a high one . . . ." *United States v. Perry*, 757 F.3d 166, 175 (4th Cir. 2014).  A court may enter a judgment of acquittal in the face of a guilty verdict only if "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29.  In making this determination, the Court must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government.  *Perry*, 757 F.3d at 175.  In evaluating the sufficiency of the evidence, the Court may not review the credibility of the witnesses, and must assume that the jury resolved all contradictions in the testimony in favor of the Government.  *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007).  The uncorroborated testimony of a single witness is sufficient to support a conviction.  *United States v. Wilson*, 115 F.3d 1185, 1190 & n.10 (4th Cir. 1997).

A similar standard applies in the context of motions for new trial under Fed. R. Crim. P. 33.  The Rule provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  With regard to Rule 33, "a trial court 'should exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it."  *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir. 2006) (citation omitted).  On appeal, the denial of a motion for new trial is reviewed for abuse of discretion.  *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010).

## IV.     ARGUMENT

All defendants either in their own motions or by adopting one another's motions, argue that the verdicts as to each count were unsupported by adequate evidence but none articulate how or why the Court should reach that conclusion.   The evidence adduced at trial as to each defendant was more than sufficient to enable the jury to conclude the guilt of each defendant beyond a reasonable doubt.

All defendants also argue that the Court erred in denying their pretrial motions and that those denials warrant a judgment of acquittal or a new trial. However, the defendants fail to articulate why this Court should revisit previously denied motions and overruled objections.

Defendants Campbell and Washington also argue that the Court erred in not granting a mistrial on two occasions.   The United States will address each in turn.

A. <u>Defendant Campbell's Motion for a Judgment of Acquittal and a New Trial</u>

Campbell argues that the Court should grant his motion for a new trial pursuant to F.R.C.P. 33 because the Court failed to grant his motion for mistrial.   This is a circular argument.   If the Court found that there was no basis for a mistrial, then there is no basis for a new trial either.

As Campbell concedes, the court's "denial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary circumstances."   *United States v. Dolorius*, 107 F.3d 248, 257 (4th Cir. 1997).   No such extraordinary circumstances can be found in the trial record of this case. In fact, Mr. Fisher created the situation he now complains about through his cross-examination of Corporal

McDougall.

Mr. Fisher, on cross-examination, asked Corporal McDougall whether Defendant Campbell had dreadlocks when he was arrested.   Corporal McDougall testified he did not. Through his question, Mr. Fisher attempted to create the misimpression that the person identified by Michelle Fullerton, a heroin customer that Corporal McDougall interviewed and who later testified in the trial, could not have been Alexander Campbell because Alexander Campbell never had dreadlocks.   That was obviously not true.   On re-direct examination of Corporal McDougall, the United States attempted to show him a series of arrest photos where Campbell clearly had dreadlocks.   When the United States placed the photographs on the courtroom projection system, Mr. Fisher objected.   The United States then removed the exhibit and the parties engaged in a sidebar with the Court.   As Mr. Fisher concedes the photographs were on the projection system, at most, for three to four seconds, if that.   Ultimately the Court sustained the objection and the photographs were not moved in evidence and no questions were asked about them or about any previous arrests or convictions associated with them.

Mr. Fisher complains that the arrest photographs showing Campbell with dreadlocks were not produced in discovery but his argument ignores the fact that the United States did not attempt to move the photographs in evidence during the direct examination of Corporal McDougall and only sought to introduce them after, in the view of the United States, Mr. Fisher tried to mislead the jury into thinking that Campell never had dreadlocks.

In any event, the objection was sustained and the photographs were never received in evidence and no testimony was elicited that discussed any of Campbell's previous arrests or prior convictions.   The single case case Mr. Fisher cites in his brief that addresses using an arrest

7

photograph for identification purposes is *United States v. Harman*, 349 F.3d 316 (4th Cir. 1965). However, he fails to mention that in that case arrest photographs were actually received in evidence and considered by the jury. Mr. Fisher cites no authority for the proposition that a new trial motion should be granted after a trial court sustained an objection to moving arrest photographs in evidence and where those photographs were shown to the jury for no more than a few seconds and where no testimony was received about any arrests or criminal convictions associated with them. And, again, it is the United States view that Mr. Fisher opened the door to this line of re-direct by specifically asking Corporal McDougall whether Campbell had dreadlocks when he was arrested.

Mr. Fisher cites *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008) for the proposition that "an 'abuse of discretion' in denying a motion for new trial will be found only upon a showing that the Defendant was unfairly prejudiced," Def. Mot. at 3. However, Mr. Fisher's citation to *Wallace* is inaccurate. In *Wallace*, the Fourth Circuit opined that "an abuse of discretion exists if ' … the defendant [can] show prejudice; no prejudice exists, however, if the jury could make individual guilt determinations by following the court's cautionary instructions.'" 515 F.3d at 330 *citing United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995). The evidence presented at trial allowed the jury to make an individual guilt determination as to Campbell. John Riffey, Christina Hild, Joseph Libercci, Kevin McCleary, Benjamin Waldman and Benjamin Wentzel all testified they bought heroin from Mr. Campbell or witnessed Mr. Campbell sell heroin. Jail calls were played where Campbell discussed obtaining heroin from co-defendant Wells and where Campbell promised to put profits from heroin sales aside for Washington while Washington was in jail. Detective Sandruck testified he witnessed a hand-

to-hand heroin sale from Campbell to a CI on May 10, 2016, as charged in Count Four. Further, when Campbell was arrested on May 24, 2016, he had more than 15 grams of heroin on him, as charged in Count Five.

Further, the Court instructed the jury to disregard any evidence that was stricken or where an objection was sustained, which was the case with the arrest photos. Specifically, the Court instructed the jury, "[a]ny evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded."

In sum, no prejudice exists because "the jury could make individual guilt determinations by following the court's cautionary instructions." *Wallace*, 515 F.3d at 330.

B. <u>Defendant's Washington's Motion for New Trial</u>

Defendant Washington argues in his motion that the Court erred in declining to grant a mistrial after the closing argument by co-defendant counsel that that, in Washington's mind, "mounted to a concession as to the existence of a drug conspiracy and the specific conspiracy charged in the indictment." Def. Mot. at 1. As the Court instructed the jury, arguments by lawyers are not evidence and, as a result, no defense counsel could "concede" that their client was guilty. Only a defendant who took the stand and admitted his guilt could make such a concession. That obviously did not occur here as no defendant took the stand.

## V.  CONCLUSION

For the foregoing reasons, the defendants' post-trial motions pursuant to F.R.CR.P. 29 and 33 are meritless and should be denied.

Respectfully submitted,
Stephen M. Schenning
Acting United States Attorney

By: _____

Leo J. Wise
Derek E. Hines
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, a copy of the foregoing document was filed on the CM-ECF system of the United States District Court for the District of Maryland for electronic delivery to all counsel of record on ECF.

_____

Leo J. Wise
Assistant United States Attorney